**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | |
|---|---|
| In re: Grand Jury Subpoena,<br>MATTHEW COLE,<br>Subpoenaed Party. | Case No. 4:26dml<br>4:25G1/NN25-2386 |

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO UNSEAL

Matthew Cole by and through counsel, submits this memorandum of law in support of his motion to unseal these proceedings, including his Motion to Quash and supporting documents, ECF Nos. 1–2 ("Motion" or "Motion to Quash"), the Government's Response in Opposition to Mr. Cole's Motion, ECF No. 8 ("Opposition"), and Mr. Cole's Reply Brief in Support of the Motion, ECF No. 9 ("Reply"). Mr. Cole further requests that the courtroom be unsealed and open to the public during any hearing scheduled on Mr. Cole's Motion and that any new documents filed in this matter be filed on the public docket unless a properly supported motion to seal them under Eastern District of Virginia Local Criminal Rule 49 is submitted contemporaneously.[1] Undersigned counsel conferred with the Government on July 28, 29, and 30, 2026, and the Government has indicated that it is continuing to consider its position.[2]

1 For the same reasons detailed below, Mr. Cole submits that this memorandum and the motion to unseal should also be placed on the public docket.

2 The Government has also noted that it may ask for the opportunity to review its sealed filing to determine whether it believes material in that filing should be redacted.

## Preliminary Statement

The Government served Mr. Cole with a subpoena *ad testificandum* (the "Subpoena") (Motion Ex. A, ECF No. 2-1) summoning him to testify before a federal grand jury in this District in connection with an article that he co-authored and that was published on September 5, 2025, in the *New York Times* ("The Times").[3] Mr. Cole moved to quash the Subpoena, and that filing was automatically docketed under seal pursuant to the practice in this District. As Mr. Cole noted at the time of that submission,[4] there is no reason, factual or legal, to maintain these proceedings under seal: nothing filed in this matter includes any grand jury material, and there is a strong presumption of public access that attaches to judicial documents. Indeed, the presumption of public access is particularly strong where, as here, there is no confidential investigative information included in any of the filings made by Mr. Cole or the Government, and the dispute involves a matter of intense public interest and concern—particularly given the Government's attempts to compel other reporters' testimony in similar circumstances.

The Subpoena is not a secret. Federal agents attempted to serve it on Mr. Cole at his home in Brooklyn, and the Government later sent it to counsel. Federal Rule of Criminal Procedure 6(e) imposes no obligation of confidentiality on subpoenaed witnesses. And even if there were some confidential aspect of the Government's investigation, the Motion papers—as well as the Government's Opposition, which contains no confidential grand jury information—do nothing to jeopardize that purported confidentiality. They merely attach the Subpoena (which has no

---

[3] Dave Philips & Matthew Cole, *How a Top Secret SEAL Team 6 Mission Into North Korea Fell Apart*, N.Y. TIMES (Sept. 5, 2025), https://www.nytimes.com/2025/09/05/us/navy-seal-north-korea-trump-2019.html; Motion Ex. B, ECF No. 2-2.

[4] Motion at 1-2, n.1.

substantive content),[5] refer to facts in the public record, and summarize at a high level counsel's non-confidential conversations with the Government in this case.[6] None of that information qualifies as a "matter occurring before the grand jury" to which an expectation of confidentiality attaches. Fed. R. Crim. P. 6(e). Mr. Cole is not privy to any non-public investigative steps the Government may be taking. While the Government references other investigative measures in its filing, it does not detail them in any way that would compromise the integrity of the grand jury's work.

To the extent there are any aspects of the Government's opposition to the Motion to Quash that it believes should not be publicly available, the Government can seek to partially maintain such material under seal by presenting a copy with targeted redactions for public filing and justifying any such redactions by an adequately supported sealing motion. Wholesale sealing of the entire proceedings, however, is not warranted. The Court should unseal these proceedings and permit the public access to any hearing in this matter.

## Applicable Law

"It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) (citations omitted). Public access promotes both the "public's interest in monitoring" the courts as well as "the integrity of the judiciary" by ensuring the public can have confidence in the federal courts' administration of justice. *Id.* at 266 (citations omitted). The right of access also aids the public's "strong interest in monitoring . . . the positions that its . . . government agencies take in litigation." *Id.* at 271 (citations omitted). "Publicity of such [judicial]

---

5 *See* Motion Ex. A, ECF No. 2-1.

6 *See* Declaration of David A. O'Neil ("O'Neil Decl."), Motion Ex. E, ECF No. 2-5, ¶¶ 3–6.

records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (internal quotations and citations omitted).

To be sure, "ongoing grand jury proceedings . . . traditionally have been kept secret." *United States v. Manglitz*, 773 F.2d 1463, 1466 (4th Cir. 1985). The "rule of grand jury secrecy," however, "is not absolute." *Id*. Under Rule 6(e), only a specified list of persons "must not disclose a matter occurring before the grand jury," and that list does not include witnesses who receive grand jury subpoenas. Fed. R. Crim. P. 6(e)(2)(B). Indeed, "[n]o obligation of secrecy may be imposed on any person except in accordance" with Rule (6)(e)(2)(B). *Id.* at 6(e)(2)(A). Although "matters occurring before the grand jury" could include "anything that may reveal what has transpired before the grand jury," Rule 6(e)(2) protects from disclosure "only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process." *In re Grand Jury Subpoena*, 920 F.2d 235, 241 (4th Cir. 1990) (internal quotations and citations omitted).

Similarly, while Rule 6(e)(5) provides for the sealing of certain hearings and Rule 6(e)(6) provides for the sealing of certain records, both rules apply only "to the extent necessary," and only "to the extent and as long as necessary," to prevent "disclosure of a matter occurring before a grand jury." Fed. R. Crim. P. 6(e)(5)–(6); *see also* Fed. R. Crim. P. 6(e) advisory committee's note to 1983 amendment (explaining that the purpose of 6(e)(5) is to prevent disclosure of "secret information" such as "matters which have previously occurred before a grand jury or are likely to occur before a grand jury with respect to a pending or ongoing investigation"). "[T]he Courts of Appeals have been nearly unanimous in regarding disclosure as committed to the discretion of the trial judge." *Gilbert v. United States*, 203 F.3d 820 at *2 (4th Cir. 2000) (quoting *Pittsburgh Plate*

*Glass Co. v. United States*, 360 U.S. 395, 399 (1959)). And "secrecy is no longer 'necessary' when the contents of grand jury matters have become public." *McHan v. Comm'r*, 558 F.3d 326, 334 (4th Cir. 2009) (citing *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1140 (D.C. Cir. 2006)).

**Discussion**

These proceedings should not remain sealed for three main reasons: (1) the filings in this matter are quintessential judicial documents entitled to a presumption of public access that is particularly strong here given the significant public interest in this dispute; (2) the documents do not reveal any matters subject to grand jury secrecy; and (3) in any event, wholesale sealing is not narrowly tailored.

*First*, the Motion papers are judicial documents to which a strong presumption of public access attaches. Every judicial document is subject to a presumption of public access. *Doe*, 749 F.3d at 265–66. Documents are "judicial records" when "they play a role in the adjudicative process[] or adjudicate substantive rights, such as when they were filed with the objective of obtaining judicial action or relief." *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 171 (4th Cir. 2024) (alteration in original) (internal quotations and citations omitted). "'Public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness.'" *Doe*, 749 F.3d at 266 (quoting *Littlejohn v. Bic Corp.*, 851 F.2d 673, 682 (3d Cir. 1988)). While the Fourth Circuit recognizes two distinct sources for the presumptive right of public access to judicial documents (the common law and the First Amendment), under either standard the right of access "may be abrogated only in unusual circumstances." *Va. Dep't of State Police*, 386 F.3d at 576 (internal quotation marks omitted).

In this matter, the presumption of public access is particularly strong: the Motion to Quash papers not only constitute paradigmatic judicial documents—legal arguments advocating for the Court to exercise its judicial power to quash a grand jury subpoena—but they also relate to a matter of significant public interest. In recent weeks, and since Mr. Cole filed his Motion, there has been extensive public attention on the government's use of subpoenas to force journalists to disclose confidential sources. In this District, the Department reportedly withdrew subpoenas issued to journalists with the *Washington Post* and *Wall Street Journal*[7] in connection with reporting on national security matters. Most recently, last week in New York, after a lengthy hearing in which the Court questioned the government about "basic compliance with the law," the Department withdrew another set of subpoenas issued to reporters at The Times.[8] The Department's decision in those cases to subpoena reporters has garnered significant public attention in recent weeks and generated extensive debate,[9] and this case implicates the same issues.

As Judge Schofield, sitting by designation in the Northern District of New York, recently explained in granting a motion to unseal under similar circumstances:

> 'public interest' bears on disclosure of grand jury materials, and . . . in some cases historical or public interest alone could justify the release of grand jury information. . . . This is especially true where the dispute itself presents issues of far-

---

[7] Alanna Durkin Richer & Eric Tucker, *Justice Department withdraws subpoenas that sought reporters' grand jury testimony, sources say*, ASSOCIATED PRESS (June 23, 2026), https://apnews.com/article/justice-department-fbi-media-c4fcb4d718d8313940f7c19a8f3f8e26.

[8] Hr'g Tr. at 12:15–16, 32:21–25, *In re Grand Jury Subpoenas Dated July 10, 2026*, No. 1:26-mc-00352-AS (S.D.N.Y. July 23, 2026), ECF No. 50.

[9] *See, e.g.*, The Editorial Board, *Trump, Iran's Assassins and John Bolton*, WALL ST. J. (July 19, 2026), https://www.wsj.com/opinion/john-bolton-donald-trump-iran-list-security-secret-service-5294ef4c?mod=hp_opin_pos_1 ("[T]he Justice Department has subpoenaed New York Times writers who reported the story to disclose their sources. That's harassment against the press that won't make the U.S. safer.").

reaching public importance.

*In re Off. of N.Y. State Att'y Gen.*, No. 25 Misc. 19 (LGS), 2025 WL 3042026, at *5 (N.D.N.Y. Oct. 31, 2025) (Schofield, J., sitting by designation) (internal quotations and citations omitted).

The public interest in disclosure is at its height here. This litigation concerns whether, and under what circumstances, the Government may compel a journalist to testify about his confidential newsgathering—a question of profound consequence for the press, for individuals who may wish to share information with the press, and for the public that relies on a free press to shed light on the actions of government. The issuance of testimonial subpoenas to reporters has already prompted a significant national debate, and the public has a compelling interest in observing how the judiciary resolves this matter.[10] *See In re Off. of N.Y. State Att'y Gen.*, 2025 WL 3042026, at *7 (granting motion to unseal because "this action concerns only [a] motion to quash two subpoenas that have already been widely disclosed and raise issues of significant public interest").

---

10 *See, e.g.*, Alexandra Bruell, Melissa Korn & Jessica Toonkel, *Trump Lawsuits, Justice Department Subpoenas Squeeze News Outlets*, WALL ST. J. (July 24, 2026), https://www.wsj.com/business/media/trump-lawsuits-justice-department-subpoenas-squeeze-news-outlets-f4a08768 ("The president and the Justice Department have subpoenaed journalists at various news outlets on at least three occasions in recent months, turning to an approach that was generally considered a last resort used only after federal officials exhausted other avenues to investigate unauthorized national security disclosures. . . . First Amendment lawyers and newsrooms say the actions amount to an attempt to chill journalists and their sources."); Salvador Rizzo, *Justice Department agrees to withdraw subpoenas to New York Times reporters*, WASH. POST (July 23, 2026), https://www.washingtonpost.com/national-security/2026/07/23/justice-department-agrees-withdraw-subpoenas-new-york-times-reporters/ ("Although it is not unprecedented for federal prosecutors to seek journalists' testimony before a grand jury, including about confidential sources, the Justice Department historically has used subpoenas to the news media as a measure of last resort when no other investigative methods are available to identify government officials leaking information. . . . Legal experts and First Amendment advocates say efforts to compel journalists to disclosure their confidential sources could chill reporting on crucial issues in the public interest.")

During a hearing last week in the Southern District of New York regarding the subpoenas issued to reporters for The Times, Judge Subramanian identified serious irregularities in the Department's handling of the investigation, including the filing of inaccurate information in an application for a non-disclosure order, the Department's failure to abide by its own rules governing issuance of subpoenas to the media, and the Department's decision not to take other investigative steps before seeking the reporters' compelled testimony. *In re Grand Jury Subpoenas Dated July 10, 2026*, Hr'g Tr. at 4:10–20, 19:6–25, 30:2–8, 35:20–36:5. The Motion and Reply in this case contend that many of the same concerns raised by Judge Subramanian are present here, and the public has a right to access and engage with the parties' arguments and this Court's resolution of the Subpoena issued to Mr. Cole, especially in the context of the broader pattern of conduct by this Department of Justice.

Because there is a strong presumption of public access, the burden falls on the Government to show "some significant interest that outweighs the presumption." *Va. Dep't of State Police*, 386 F.3d at 575 (internal quotations and citations omitted). When the basis for the right of public access is the First Amendment, "a district court may restrict access only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Id.* (internal quotations and citations omitted). The Government must "present specific reasons in support of its position," *id.*, and show a "substantial probability" that the asserted interest will be prejudiced by disclosure. *Press-Enterprise v. Superior Ct. of Cal. for Riverside Cnty.*, 478 US 1, 14 (1986). And even if the basis for the right of public access is the common law, the burden still rests on the Government to show "some significant interest that outweighs the presumption" of access. *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (citations omitted). The Government cannot carry that burden. Indeed, in recognition of the presumption of public

access in similar circumstances, the Department did not contest unsealing the motion to quash, related filings, and its own opposition in The Times case in front of Judge Subramanian.[11] For the same reasons, the Government cannot show that sealing is necessary here.

*Second*, a generalized interest in grand jury secrecy does not justify sealing the Motion papers, including the Government's Opposition, because these materials do not reveal anything occurring before a grand jury or that is otherwise secret. Rule 6(e), which governs grand jury secrecy, does not extend to witnesses like Mr. Cole who received a subpoena. Fed. R. Crim. P. 6(e)(2)(B). It also protects only "matter[s] occurring before the grand jury[,]" not matters tangentially related to a grand jury proceeding. *Id.*; *see also United States v. Rosen*, 471 F. Supp. 2d 651, 655 (E.D. Va. 2007) (collecting examples of typical violations such as revealing "the identity of grand jurors or expected witnesses" or "transcripts or the substance of testimony") (citations omitted).

There is no basis to treat any of the filings in this case as pertaining to a "matter occurring before the grand jury." Mr. Cole has "[n]o obligation of secrecy," Fed. R. Crim. P. 6(e)(2)(A), and in any event, his submissions disclose nothing pertaining to any confidential grand jury proceedings. Moreover, the Government's Opposition is notably devoid of any details pertaining to investigative efforts to date. The Government references basic and general information about steps *it* has taken (*e.g.*, "the gathering and review of internal government records, numerous voluntary witness interviews, and applications for the issuance of other legal process from this Court") but says nothing about the *grand jury's* investigation. Opposition at 4. "[A] distinction

11 Opposition to Motion to Quash Subpoenas ad testificandum at 6, *In re Grand Jury Subpoenas Dated July 10, 2026*, No. 1:26-mc-00352-AS (S.D.N.Y. July 21, 2026), ECF No. 29 ("The Government does not seek sealing of any of the filings or court orders to date, including this letter.")

must be drawn between 'statements by a prosecutor's office with respect to its own investigation, and statements by a prosecutor's office with respect to a grand jury's investigation,' because the latter is a Rule 6(e) violation while the former is not." *Rosen*, 471 F. Supp. 2d at 655 (quoting *In re Sealed Case No. 99-3091*, 192 F.3d 995, 1002 (D.C. Cir. 1999)). Information qualifies as a "matter[] occurring before the grand jury" only if the information "disclosed concern[s] the details of the grand jury's past or future proceedings." *Rosen*, 471 F. Supp. 2d at 656. Because nothing in the Motion or Opposition reveals the details of proceedings before the grand jury, there is no basis to qualify these filings as anything other than judicial documents to which a presumption of public access attaches.

To the extent that the Government is taking non-public investigative steps, Mr. Cole is not privy to them and they are not disclosed in the litigation concerning the Motion. In fact, the Government has repeatedly declined to provide any detail about those steps in its Opposition or during any of its conversations with undersigned counsel. As Judge Schofield put it in *In re Off. of N.Y. State Att'y Gen.*, "[u]nsealing . . . is not only permissible but compelled. One simple fact drives this conclusion: the information at issue is not secret." 2025 WL 3042026, at *1.

*Third*, even assuming *arguendo* that the Government could establish some hypothetical secrecy interest, sealing the Motion papers in their entirety is not warranted. Sealing must be "narrowly tailored" to serve the Government's interest. *Rushford*, 846 F.2d at 253; Fed. R. Crim. P. 6(e)(5)–(6) (permitting closing hearings "to the extent necessary to prevent disclosure of a matter occurring before a grand jury" and sealing only "to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury"). To the extent any portion of the Opposition warrants sealing, the Government should identify and seek to redact specific portions of its brief rather than assert secrecy over the entire proceeding.

## **Conclusion**

For the foregoing reasons, the Court should grant Mr. Cole's motion to unseal this proceeding and should order the Courtroom unsealed during any upcoming proceedings.

Dated: July 30, 2026

Respectfully submitted,

*/s/ Andrew Bosse*
Andrew Bosse (VSB No. 98616)
abosse@bkbfirm.com
BAUGHMAN KROUP BOSSE PLLC
500 East Main Street, Suite 1400
Norfolk, Virginia 23510
Tel: (757) 904-5373

David A. O'Neil*
daoneil@debevoise.com
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Ave NW
Washington, DC 20004
Tel: (202) 383-8000

*Counsel for Movant Matthew Cole*
*Admitted *pro hac vice.*

**CERTIFICATE OF SERVICE**

I certify that on July 30, 2026, I sent a true and correct copy of the foregoing to counsel for the Government in the United States Attorney's Office for the Eastern District of Virginia and the National Security Division of the Department of Justice by electronic mail.

/s/ Andrew Bosse
Andrew Bosse (VSB No. 98616)
abosse@bkbfirm.com
BAUGHMAN KROUP BOSSE PLLC
500 East Main Street, Suite 1400
Norfolk, Virginia 23510
Tel.: (757) 904-5373

*Counsel for Movant Michael Cole*